OPINION OF THE COURT
Ira B. Harkavy, J.
Plaintiff General Electric Credit Auto Lease, Inc., commenced this action against defendant lessee Philip Brody, to recover the sum of $8,678.16. The plaintiff alleged that this was the balance due on the motor vehicle open-end lease entered into by the parties on July 26, 1977.
The plaintiff’s predecessor, First Lease Inc., leased a 1977 Peugeot to the defendant Brody. During the fall of 1978, Brody claims to have left the car in front of his father’s home in the Williamsburg section of Brooklyn. The car was found abandoned by the police, who returned the car to the owner, General Electric Credit Auto Lease, Inc. The plaintiff contends that, at the time, it was actively attempting to locate the car to repossess it because of default in payments by defendant.
Brody countered that he was not in arrears in making the car payments. He claimed he left the car parked in his father’s parking spot while he traveled during a two-month *806 period. He further claims that during this time he was unaware that the car was stolen, and was only made aware of the theft after being informed that the police recovered the car and returned it to the lessor, General Electric.
Plaintiff’s sole cause of action is to recover the claimed balance due on the car, namely, $8,678.16. Although Brody denies that he is in arrears, he presents no evidence to refute the plaintiff’s claim. The court finds, based on a preponderance of the credible evidence, that the plaintiff is entitled to a payment of $8,624.16, computed as follows:
$4,000.00 Residual
4,761.00 Unpaid depreciation 20 months (a 238.05
1,802.03 Delinquency 4 months (5. 413.96 ± 146.19
773.92 Early termination 2 (a 386.96
162.20 Repossession fees
(2,456.95) Net Sale Proceeds
(418.04) Security Deposit plus interest
$8,624.16 TOTAL
Brody raised an affirmative defense that the damage done to the car at the time it was stolen should be subtracted from the balance due. The basis for this contention is that the plaintiff has a duty to attempt to mitigate damages. Thus, Brody argues that the insurance clause which was part of the lease represents a protection against being charged for the damages that occurred. The plaintiff informed the insurance company orally of the damages, but after the insurance company turned down the request for a recovery, the plaintiff made no further attempts to file a written claim or to notify the defendant of the rejection of the claim. Defendant states that he would have filed a claim if he had known that the plaintiff hadn’t.
The question at issue is whether the plaintiff lessor had a duty to mitigate damages and whether in so doing, was compelled to immediately inform the defendant of the insurance company’s refusal to pay.
The law requires that a plaintiff at least attempt to minimize damages, if not to mitigate them. The law casts upon the plaintiff the responsibility to make a reasonable effort to reduce the damages he has sustained, resulting from the defendant’s acts. It also precludes recovery by the *807 plaintiff for ensuing losses which the plaintiff could have prevented via reasonable effort. (36 NY Jur 2d, Damages, § 126.) Its reasoning is to attempt to put the injured party in as good a position as he would have been put had there been full performance (in this case, full balance paid on the leased vehicle), yet the expectation of full performance must be evaluated as to the least necessary loss to the defendant and thus, the plaintiff will never be given judgment for damages on losses that could have been avoided by reasonable efforts. (5 Corbin, Contracts, § 1039.)
Case law supports the notion that there is a duty imposed on the plaintiff to minimize the cost to the defendant. In Moore v Leggette (24 AD2d 891, affd 18 NY2d 864), the plaintiff, a passenger in an automobile sued the owner of the automobile for his injuries which were allegedly suffered as a result of the owner’s negligence. The Supreme Court, Appellate Division, reversed the lower court’s judgment which applied the general rule that a wrongdoer may not claim the proceeds of an insurance policy in mitigation of damages. The Appellate Division reasoned that the general rule should not be applied where the defendant wrongdoer had himself procured insurance for the benefit of the injured party. The court noted the prudence and foresight of the defendant for taking out a policy of insurance in order to indemnify from the hazards connected with the use of the automobile.
While it is true in the case at hand that the lessee’s payment of premiums to the lessor’s insurer was a precondition to the lease agreement, there is a good deal of similarity with Moore {supra). Here, as in Moore, the defendant wrongdoer procured insurance for the benefit of the plaintiff, the injured party. Certainly, there was foresight and prudence on the part of the defendant in the instant case, even if it was a prerequisite to the lease.
The reasoning utilized by the court in Moore {supra) to justify the mitigation of damage through the use of an insurance policy can be taken a step further. To have allowed the passenger to accept payment from defendant’s insurer and at the same time recover the full amount of damages from the defendant would disregard the fact that the insurance policy would clearly yield a windfall for the *808 plaintiff. Certainly from an equity perspective, it would be unfair to allow a double recovery for the plaintiff.
In the case at bar, however, an equity agreement will fail where the defendant has shown no interest in the condition of his leased car. At the very least, a lessee is a bailee and thus may be held responsible for resulting damage to the bailment while under his control. Without question, the car was under Brody’s legal control if not his actual physical control at the time of its disappearance since the alleged theft took place during the three-year period within which the lease was operative. There is no evidence to suggest that Brody took any steps to obtain information about the car or its whereabouts. Rather, it was the plaintiff who notified the defendant on November 13,1978 that it had taken possession of the car. In addition, plaintiff informed Brody that if he didn’t make appropriate arrangements regarding monthly lease payments within 15 days, the plaintiff would offer the car for sale.
Brody contends that if he had been notified immediately that the car had sustained damages, he certainty would have notified the insurance company of the loss. This, however, is untenable in light of Brody’s inaction and apparent lack of interest to inquire as to the status of the Peugeot. It would be unfair to allow a defendant to claim a duty on the part of the plaintiff to mitigate, where the defendant himself was passive at best, in determining the condition of the vehicle.
In addition, Brody did not prove that the insurer, Liberty Mutual, should have paid damages to plaintiff under the terms of the insurance policy. Brody did not even contact the insurance company to inquire whether it would cover damages to the car. His contention that he was unaware over a period of five years that the car was damaged falls by the wayside, since he did not respond to the plaintiff’s notices and made no inquiries on his own as to the condition of the car.
While it is true that the plaintiff as the holder of an insurance policy has a duty to mitigate losses, it does not extend beyond a requirement to contact the insurer. The defendant, on the other hand, must do his utmost to alert the insurance company as to the damages plaintiff/insured *809 party may have suffered. Here, plaintiff did contact its insurer, Liberty Mutual, and its claim was turned down. By contrast, Brody did not contact Liberty Mutual for what he claims was a lack of knowledge that he had to. However, knowing that the car was stolen and was returned to the plaintiff, the court finds that the defendant should have contacted the plaintiff to determine the condition of the car and to reacquire same and by failing to do so, displayed his lack of interest.
In light of these facts, judgment is granted for the plaintiff for the balance due in the amount of $8,624.16, the amount proved, with interest from November 13,1978, plus costs and disbursements. The counterclaim is withdrawn with prejudice during the trial.